**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SHEILA VENTURA LEWIS, | ) CASE NO. 1:19-cv-02723 |
| ) | |
| Plaintiff, | ) JUDGE BENITA Y. PEARSON |
| ) | |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| ) | |
| ANDREW SAUL, | ) |
| *Comm'r of Soc. Sec.*, | ) **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. | ) |

Plaintiff Sheila Ventura Lewis ("Plaintiff") challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

**I. Procedural History**

Plaintiff applied for DIB on October 12, 2016, alleging a disability onset date of April 1, 2016. (R. 9, Transcript ("Tr.") 145-146). The application was denied initially and upon

reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 103-144). Plaintiff participated in the hearing on May 10, 2018, was represented by counsel, and testified. (Tr. 30-83). A vocational expert ("VE") also participated and testified. *Id*. On October 3, 2018, the ALJ found Plaintiff not disabled. (Tr. 25). On September 19, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10, 11 & 12).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by failing to designate major depressive disorder a severe impairment at Step Two, and (2) the ALJ erred by finding Plaintiff was capable of performing her past relevant work. (R. 10).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records[2]

Before her alleged onset date, Plaintiff injured her right shoulder at work on November 5, 2015. (Tr. 317).

On November 30, 2015, Plaintiff was seen by physical therapist Annette Di Nallo after her shoulder hurt for more than a few days. (Tr. 308). The plan was for Plaintiff to be seen once a

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

[2] The Commissioner asserts the record is devoid of any treatment records concerning Plaintiff's alleged mental impairments save for the results of the consultative examination set forth in the next section. (R. 11, PageID# 412). Plaintiff's reply does not challenge this assertion, or otherwise identify mental health treatment records. (R, 12).

week for three weeks. (Tr. 309).

On December 17, 2015, Plaintiff was seen by George Balis, M.D., for "[p]ersisting right shoulder pain likely related to rotator cuff tendinitis and impingement. Has minor degenerative changes at the A-C joint on x-rays." (Tr. 294). He recommended a diagnostic ultrasound, followed by steroid injections, and a resumption of physical therapy a week after the injections. *Id*.

On January 19, 2016, Plaintiff was discharged from physical therapy after only two visits as she had not returned to therapy and did not schedule any follow-up appointments. (Tr. 227).

On April 5, 2016, Plaintiff was seen by chiropractor Steven Levak, D.C., for complaints of right shoulder pain. (Tr. 317). On physical examination, Plaintiff was "experiencing a moderate to severe amount of pain and discomfort," "[s]ensory evaluation was within normal limits in the bilateral upper extremity," "[t]riceps deep tendon reflexes were graded 1 out of 4 bilaterally," "[m]annual muscle testing revealed a 4 out of 5 on all planes of motion of the right shoulder," supraspinatus press test and Apley's press test were both positive for the reproduction of pain in the right shoulder, and there was "a reduction in the right shoulder ROM." (R. 318). Dr. Levak's clinical impression was impingement syndrome of the right shoulder. *Id*. He recommended ice, heat, inferential and ultrasound. *Id*.

On April 18, 2016, an MRI of Plaintiff's right shoulder revealed acromioclavicular joint hypertrophy with mild impingement, supraspinatus and subscapularis tendinitis, and an abnormal appearance of the anterior aspect of the glenoid labrum suspect for a torn labrum. (Tr. 322-323).

On July 18, 2016, after Plaintiff's workers' compensation claim was denied, Dr. Levak wrote a letter opining that, in his professional opinion, Plaintiff's right shoulder impingement syndrome was the direct and proximate result of normal performance of her job duties (Tr. 338).

On July 20, 2016, Dr. Levak's treatment notes indicate that Plaintiff's right shoulder pain and discomfort were persisting, that she was performing supervised active rehabilitation resulting in a favorable response, and that Plaintiff was "really enjoying the care she is receiving," but "continues to note ongoing paresthesia and burning in the right upper extremity." (Tr. 340).

On August 1, 2016, Dr. Levak noted Plaintiff continued to show improvement with the active rehabilitation, though she reported her pain as 7 out of 10 on a ten-point scale. (Tr. 341). She tolerated all therapy well. *Id*. Two days later he noted improvement in Plaintiff's range of motion and stretching. *Id*.

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On May 18, 2016, Plaintiff was seen for an independent medical evaluation by W. Kent Soderstrum, M.D. (Tr. 327-331). Examination of Plaintiff's right shoulder revealed "no swelling, effusion, atrophy, scars, or gross deformities. [However,] [t]here was reported tenderness anteriorly over the acromioclavicular joint, posteriorly over the glenohumeral region, and over the right upper trapezius muscles." (Tr. 328-329). He noted "well preserved strength ... with no reported discomfort" on resistance testing. (Tr. 329). Cross-chest adduction and O'Brian's test were positive for acromioclavicular joint pain. *Id*. Plaintiff reported discomfort on active range of-motion testing. *Id*. Dr. Soderstrum found there was sufficient evidence of impingement syndrome, but believed there was insufficient evidence demonstrating a causal relationship between Plaintiff's work activity and her condition. (Tr. 330). Dr. Soderstrum observed that "[t]here is strong evidence also for an association between elevated body mass index of greater than 30 and the development of impingement syndrome." (Tr. 331).

State agency medical consultant Rannie Amiri, M.D., reviewed Plaintiff's medical records in January 2017 and opined that there was insufficient evidence for a disability determination

4

(Tr. 87).

On March 15, 2017, Plaintiff underwent a consultative psychological examination performed by Charles Misja, Ph.D. (Tr. 269-275). Plaintiff told Dr. Misja that she was hospitalized for depression in the 1980s, but she was not suicidal. (Tr. 271). She indicated that she never received outpatient mental health treatment, that she had seen two different psychiatrists, and that she was prescribed medications that provided little benefit. *Id*. She reported never attempting suicide, but having thought about it many times. *Id*. She worked for an electronics firm for 13 years but was let go when the company downsized. *Id*. She reported no problems with attendance, punctuality, changes, or learning new things. (Tr. 272). As for her daily activities, Plaintiff said that she and her husband belong to a yacht club; she gardens; she manages her financial affairs; and she prepares meals, cleans, does laundry, walks her dog, and shops. *Id*. Dr. Misja observed that Plaintiff was friendly and cooperative, made good eye contact, had constricted affect and depressed mood, and functioned at an average rate of intelligence. (Tr. 272-273). Plaintiff reported that she has experienced panic attacks, but none in the past few years. (Tr. 273). Dr. Misja diagnosed Plaintiff with "major depression, recurrent, mild." *Id*. He opined that Plaintiff's depression was "not debilitating." (Tr. 274). Dr. Misja concluded that Plaintiff had "no difficulty understanding, remembering, and implementing ordinary instructions; was likely to have "minimal" problems maintaining attention, concentration, and persistence and pace; was likely to have "minimal" problems responding appropriately to supervision and coworkers; and was likely to have "minimal" problems responding appropriately to work pressures. (Tr. 274-275).

On March 24, 2017, State Agency physician Diane Manos, M.D., reviewed the records and completed a physical residual functional capacity (RFC) assessment. (Tr. 98-99). She opined that

5

Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently; and sit for six hours and stand/walk for six hours in an eight-hour workday. *Id*. Dr. Manos found there were no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 99).

**B. Relevant Hearing Testimony**

At the May 10, 2018 hearing, Plaintiff testified as follows:

- She last worked in 2016 for Newark Electronics as a corporate product analyst reviewing quotations from external customers. (Tr. 37-38). The job was performed mostly in a seated position. (Tr. 38). She did not have to perform any lifting during the course of a workday. (Tr. 39). The job involved lateral motions with the hands. *Id*. She was let go after being placed on a performance improvement plan. *Id*.

- She has a college associate degree. (Tr. 38).

- All of her positions prior to her work at Newark were "administrative in nature, doing sales quotation preparation for outside customers." (Tr. 41). Those jobs were also performed in a seated position. *Id*.

- Beginning in October of 2015, she began experiencing pain in her shoulders and loss of sensation in her fingers. (Tr. 51). She went to see Dr. Bayliss and underwent an MRI. (Tr. 52). She followed his prescribed treatment, including daily physical therapy for six to eight weeks. *Id*. She could not continue treatment after being let go, as she lost her insurance. (Tr. 53).

- She was sad about how her employment ended. (Tr. 53). She takes Lexapro for depression. (Tr. 61). She has been taking Lexapro for ten years, and she thinks it helps. (Tr. 64). She is anxious about not being able to work, and has a "little bit" of a problem with concentration. (Tr. 61). She has trouble with focus, but did not think she has problems with concentration when it came to watching television or reading a book. (Tr. 62). She reads a lot. *Id*.

- At the time period of the hearing, she noted waking up with numbness in her fingertips. As a result, she stopped gardening and would drop objects like cups or pots. (Tr. 57-58). She changed the way she dresses to accommodate to use her non-injured arm. (Tr. 58).

- Reaching in front of her as well as to the side is painful and limited. (Tr. 59). She has difficulty pushing/pulling a vacuum and even a door. *Id*. She avoids driving due to the loss of feeling in her fingers. (Tr. 60). She drives once per week. (Tr. 64).

- She goes for approximately one-mile walks. (Tr. 63).

- Her other medications include Atenolol, Lipitor, and Albuterol for her heart, high blood pressure, and breathing problems. (Tr. 64).

- She has had limited medical treatment since losing her jobs, because she cannot afford it. (Tr. 70).

The VE indicated Plaintiff's most recent past relevant work was a "composite job," which he believed combined aspects of data communications operator, Dictionary of Occupational Titles (DOT) 203.382-030, a sedentary job with an SVP of 5, and a database support analyst, DOT number is 032.262-010, a sedentary job with an SVP of 7. (Tr. 73-74). Prior to that, Plaintiff's jobs were described as a data entry clerk, DOT 203.582-054, a sedentary job with an SVP of 4. (Tr. 74). The ALJ posed the following hypothetical question to the VE:

> [A]ssume a hypothetical individual with the past jobs you have just described. I'd further ask you to assume that the hypothetical individual was limited to the following. The hypothetical individual would fall within the exertional category of light, but would have the following further restrictions…. [T]he hypothetical individual would be limited insofar as they would be limited to frequent reaching with the right upper extremity overhead and all around. The hypothetical individual would be limited insofar as they would only occasionally be required to use ramps and stairs and never use ladders, scaffolds or ropes.

(Tr. 74-75). The VE testified that such an individual could perform all of Plaintiff's past jobs with those limitations. (Tr. 75).

The ALJ posed a second hypothetical: "the hypothetical individual would have the same restrictions as in the first hypothetical. However, the hypothetical individual would be limited to frequent handling and fingering with the right upper extremity." (Tr. 75). The VE testified that such an individual would be unable to perform any of Plaintiff's past relevant work, as they all required constant fingering. *Id*. Later in the hearing, the ALJ inquired: "going back to my second hypothetical, would there be any transferable skills and that's with frequent handling and fingering with the right upper extremity? (Tr. 76). The VE testified in the affirmative, indicating

7

that certainly there would be transferability to other clerical work. (Tr. 77). The VE testified that such an individual could perform the following jobs: reception clerk, DOT 237.367-010 (350,000 jobs nationally); and a clerical receptionist, DOT 237.367-038 (450,000 jobs nationally). (Tr. 78). The VE did not believe age would impact the transferability of the skills. *Id*.

The ALJ posed a third hypothetical: "the hypothetical individual would have the same restrictions as in the first hypothetical, but the hypothetical individual … would be limited insofar as they would instead of frequent reaching with the upper extremity overhead and all around, would be limited to occasional reaching with the upper extremities overhead and all around." (Tr. 75-76). The VE testified that such an individual could perform Plaintiff's past relevant work: "if we didn't have any limitations to the other extremity, the past work would be feasible with occasional reach overhead and all around with the right. I would still -- I would give you the same jobs -- the past jobs." (Tr. 76).

The ALJ posed a fourth hypothetical inquiring "if you were to add the restrictions from the first hypothetical as well as simple/routine/repetitive work, would a hypothetical individual be able to perform the past work described earlier in your testimony?" (Tr. 76). The VE testified such limitations would eliminate all past work as those jobs "certainly went beyond simple, routine and repetitive." *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since April 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: right shoulder impingement syndrome and mild degenerative changes of the acromioclavicular joint of the right shoulder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 4 04.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except for the following limitations. She is limited to frequent reaching overhead and all around with the right upper extremity. She can occasionally use ramps and stairs, but she can never use ladders, ropes, or scaffolds.

6. The claimant is capable of performing past relevant work as a corporate product analyst. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2016, through the date of this decision (20 CFR 404.1520(1)).

(Tr. 17-24).

### V. Law and Analysis

**A. Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court

does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

**1. Alleged Error at Step Two of the Sequential Evaluation**

In the first assignment of error, Plaintiff asserts the ALJ erred at Step Two of the sequential evaluation by not designating Plaintiff's depressive disorder as a severe impairment. (R. 10, PageID# 402-405). The Commissioner generally argues that failure to designate an impairment as severe at Step Two of the sequential evaluation is irrelevant where other impairments are deemed severe and the ALJ continues with the sequential evaluation. (R. 11, PageID# 415).

At Step Two of the sequential analysis, claimant has the burden of proving she has a severe medically determinable impairment, in order to establish disability within the meaning of the Act. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(ii)); *Jent v. Secretary, HHS*, 919 F.2d 140, 1990 WL 183907, at *1 (6th Cir. 1990) (TABLE, text in WESTLAW) (citing *Higgs v. Secretary, HHS*, 880 F.2d 860, 862-863 (6th Cir. 1988)); *Gist v. Secretary, HHS*, 736 F.2d 352, 357 (6th Cir. 1984)). As defined by Social Security regulations, a "severe" impairment is "any impairment or combination of

11

impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Nevertheless, "[a]t step two 'significant' is liberally construed in favor of the claimant[, but] [t]he regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 428 (6th Cir. 2007); *see also* 20 C.F.R. § 416.920a(d)(1) ("If [the Commissioner] rate[s] the degree of limitation as 'none' or 'mild', [the Commissioner] will generally conclude that [the] impairment is not severe…"). The Sixth Circuit Court of Appeals has construed Step Two's severity requirement as a "de minimus hurdle." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007).

While the ALJ declined to designate Plaintiff's major depressive disorder as "severe" (Tr. 18), his failure to do so does not necessarily signify error. Because an ALJ must move on to the subsequent steps in the sequential evaluation even if only one impairment is designated as "severe," an ALJ is not required to analyze the remainder of a claimant's impairments to determine whether they too are severe. *See, e.g., Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008) ("The fact that some of [claimant's] impairments were not deemed to be severe at step two is … legally irrelevant") (*citing Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same) holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe); *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x. 574, 577 (6th Cir. 2009) (same); *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. App'x. 516, 522 (6th Cir. 2008)).

Once the ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by *all of an individual's impairments, even those that are not 'severe.'*" SSR 96–8p, 1996 WL 374184 at *5 (Jul. 2, 1996) (emphasis added).

12

Thus, an ALJ's decision not to designate an impairment as "severe" at step two does "not constitute reversible error," so long as the ALJ considers all of a claimant's limitations caused by both severe and non-severe impairments at the remaining steps of the sequential evaluation. *Maziarz*, 837 F.2d at 244; *see also Nejat*, 359 Fed. App'x at 576-577. Here, the ALJ designated major depressive disorder—as well as obesity and obstructive sleep apnea—as non-severe impairments. (Tr. 17).

Although Plaintiff is correct that the ALJ did not designate major depressive disorder as a "severe" impairment, the ALJ found multiple severe impairments, continued with the sequential evaluation, and considered the impact of non-severe impairments when arriving at the RFC. Specifically, in part five of the decision (Tr. 21-23), the ALJ expressly considered the only meaningful mental health opinion in the record, that of consultative examiner Dr. Misja, and ascribed it significant weight. (Tr. 23). As recounted in the facts section above, despite diagnosing Plaintiff with major depression, Dr. Misja characterized Plaintiff's depression as "mild" and "low-grade." (Tr. 273-274). Dr. Misja opined that Plaintiff's depression was "not debilitating." (Tr. 274). Dr. Misja concluded that Plaintiff had "no difficulty understanding, remembering, and implementing ordinary instructions; was likely to have "minimal" problems maintaining attention, concentration, and persistence and pace; was likely to have "minimal" problems responding appropriately to supervision and coworkers; and was likely to have "minimal" problems responding appropriately to work pressures. (Tr. 274-275).

While Plaintiff testified to concentration and lack of focus, the ALJ was not obligated to accept Plaintiff's testimony. Further, Plaintiff has not taken issue with the ALJ's credibility

determination, which is entitled to substantial deference.[3] The ALJ, however, explicitly found that Plaintiff's alleged symptoms and ensuing limitations "not entirely consistent with the medical evidence and other evidence in the record…." (Tr. 21). In other words, the ALJ did not find Plaintiff's statements entirely credible.

Moreover, Plaintiff has not pointed to any opinions from medical sources suggesting that her depression would result in limitations inconsistent with the demands of the RFC. Her reference to prescriptions for psychotropic medications, without more, does not establish that any specific mental-based limitations were warranted. Even where an impairment is designated severe, it is not necessarily debilitating. A diagnosis alone is of little consequence, as it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment. *See Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008) ("a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits").

In an argument tacked on at the end of the first assignment of error, Plaintiff asserts that the ALJ also erred when he failed to consider the effects of her shoulder problems on her ability to

---

[3] Plaintiff has not presented the court with a legal argument challenging the ALJ's credibility determination, and, therefore, has waived any issue regarding ALJ's credibility assessment. *See, e.g., Siple-Niehaus v. Comm'r of Soc. Sec.*, No. 5:15cv01167, 2016 WL 2868735, at n. 12 (N.D. Ohio, May 17, 2016) (finding that plaintiff "has not challenged the ALJ's credibility determination" and, therefore, "arguments pertaining to the ALJ's assessment of her credibility have been waived.") (Burke, M.J.); *cf. Williams v. Comm'r of Soc. Sec.*, No. 2:14cv2655, 2016 WL 2733518, at *2 (S.D. Ohio May 10, 2016) (declining to consider Plaintiff's argument challenging the ALJ's credibility determination, because it was not raised before the Magistrate Judge in the statement of errors). In addition, the court's role in a social security appeal is not to conduct a *de novo* review of the evidence, to make credibility determinations, or to reweigh the evidence; and therefore, it declines Plaintiff's invitation to deem her characterization of symptoms and limitations as fully credible. *Brainard*, 889 F.2d at 681.

sustain work activity. (R. 10, PageID# 405). She relies on the results of an MRI and her own hearing testimony. *Id*. The Plaintiff, however, cites no medical source that suggests the findings of the MRI necessitated greater limitations than the ultimate RFC. Again, a diagnosis alone is does not axiomatically result in functional limitations. Moreover, to the extent Plaintiff relies on her own testimony as to the impact of her impairments on her functionality, the ALJ was not obligated to incorporate into the RFC those self-reported limitations that were rejected.

Therefore, Plaintiff's first assignment of error is without merit.

**2. Step Four Finding**

In the second assignment of error, Plaintiff argues that the ALJ erred by finding that she could return to her past job as a corporate product analyst. (R. 10, PageID# 407-409). Specifically, Plaintiff contends that the ALJ should have included in the RFC a limitation to only *frequent* handling and fingering—a limitation that would have precluded Plaintiff's ability to perform her past work based on the VE's testimony. (R. 10, PageID# 407, citing Tr. 75). A claimant's RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a).[4] The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c).

At the fifth and final step of the disability analysis, if a claimant cannot perform past relevant work, the ALJ must determine whether the claimant can adjust to other work in light of

---

[4] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, **the claimant's RFC**, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

the claimant's RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this final step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *accord White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779 (6th Cir. 2009). An ALJ's finding that a claimant can perform a significant number of jobs must be supported by substantial evidence (*i.e.* that the claimant has the vocational qualifications to perform specific jobs). *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 799 (6th Cir. 2004) (*citing Varley v. Sec'y of Health & Varley*, 820 F.2d 777, 779 (6th Cir. 1987)). Testimony from a vocational expert—in response to a hypothetical question—may constitute such substantial evidence, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)).

Plaintiff's argument is premised on her belief that the evidence of record, specifically an MRI, warranted a limitation to only *frequent* handling and fingering. (R. 10, PageID# 407). The ALJ, however, plainly rejected such a limitation. While the ALJ inquired at the hearing as to the impact of such a limitation in his second hypothetical question (Tr. 75), the ALJ appears to have intentionally omitted it from the final RFC. To the extent Plaintiff believes it was error for him to do so because of an MRI, she cites no medical source that suggests the findings of the MRI

16

necessitated greater limitations than those contained in the ultimate RFC. Conversely, the ALJ ascribed partial weight to the opinion of State Agency physician, Dr. Manos, who found Plaintiff had no manipulative limitations despite rendering her opinion after the April 2016 MRI.[5] (Tr. 23, 99). Further, this court cannot interpret raw medical data, such as an MRI, and make the inferential leap that the findings of the MRI warranted a limitation to only frequent handling and fingering.

An ALJ need only incorporate those limitations he or she accepted as credible into the hypothetical question. *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). As the ALJ did not find that handling or fingering restrictions were warranted, the Plaintiff has identified no error at Step Four, and the ALJ could rely on the VE's testimony that Plaintiff could perform her past relevant work if she were as limited as set forth in the RFC, which corresponds to the first hypothetical question posed to the VE. (Tr. 74-75).

Plaintiff also contends that if her major depressive disorder resulted in the inability to perform semi-skilled or skilled work, she could not perform any of her past relevant work (R. 10, PageID# 408). However, as discussed above, the ALJ gave significant weight to Dr. Misja's opinion, which did not assess any limitations that would have precluded skilled or semi-skilled work.

Therefore, Plaintiff's second assignment of error is without merit.

---

[5] Though the ALJ found some reaching restrictions and a reduction to light exertional work was warranted, that did not preclude the ALJ from relying on Dr. Manos's opinion to find fingering and handling restrictions were unnecessary.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: December 31, 2020

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. **28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986).**